**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
*Alexandria Division*

| | |
|---|---|
| In re: | * |
| | * |
| JAMES KENNETH JUBILEE | *  Case No. 13-12268 |
| | *  (Chapter 11) |
| Debtor. | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**DEBTOR'S AMENDED PLAN OF REORGANIZATION**

James Kenneth Jubilee, the Debtor and Debtor-In-Possession in the above-captioned case, by counsel, proposes this Plan of Reorganization pursuant to 11 U.S.C. § 1121(a).

ARTICLE 1
DEFINITIONS

In the Plan:

1.01. Administrative Expense means a right to payment that is entitled to administrative priority under § 503 of the Code other than professional fees owed to undersigned counsel.

1.02. Allowed Claim means a Claim:

(A) If no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by the Code, the Rules, an order of the Court, or the Plan: (I) in the amount for which either a proof of claim has been filed with the Court within the applicable period of limitation fixed by F.R.Bankr.P.3003, the Rules, or an order of the Court or, if (I) does not apply, the (ii) in the amount scheduled in the list of creditors prepared and filed with the Court pursuant to F.R.Bankr.P. 1007, as such may be amended pursuant to F.R.Bankr.P. 1009 prior to the Confirmation Date, and not listed therein as disputed, contingent, or unliquidated.

(B) If an objection to the allowance thereof has been interposed: in the amount determined by the Court by a Final Order allowing the Claim.

1.03. Allowed Priority Claim means an Allowed Unsecured Claim to the extent that it is entitled to priority under §§ 507(a)(3) through (9) of the Code.

1.04. Allowed Secured Claim means an Allowed Claim that is secured by a lien on property in which the Estate has an interest, to the extent of the value of such property that is available to such claimant.

1.06. Case means this bankruptcy case no. 13-12268.

1.07 Claim means any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtors that existed on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.08. Code means the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., and any amendments thereof.

1.09. Confirmation Date means the date upon which the Order of Confirmation has been both entered by the Court and docketed by the clerk.

1.10. Court means the U.S. Bankruptcy Court for the Eastern District of Virginia – Alexandria Division.

1.11. Creditor means a Person holding a Claim.

1.12. Debtor means James Kenneth Jubilee

1.13 Effective Date means the date fifteen (15) days following the Confirmation Date; provided, however, that (a) if the eleventh day following the Confirmation Date falls on a Saturday, Sunday, legal holiday, or other day on which the Court is closed, then the Effective Date shall be on the first business day thereafter, and (b) if any act required to be performed on

the Effective Date, or if any condition required to exist on the Effective Date, cannot be performed or made to exist due to the existence of a court order staying or otherwise precluding execution of the Plan or any part thereof, then the Effective Date shall be fifteen (15) days after the date of entry of a Final Order nullifying, vacating, or otherwise modifying such stay to permit performance.

  1.14. Estate means the bankruptcy estate created under § 541 of the Code, consisting of the Debtor's property and rights to property.

  1.15. Final Order means an order of a court as to which any appeal that has been or may be taken has been resolved or as to which the time for appeal (including any applicable extensions which might be available), or further appeal, or petition for a writ of certiorari, has expired.

  1.16. Order of Confirmation means the order entered by the Court confirming the Plan.

  1.17. Person includes an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

  1.18. Petition Date means the date on which the Debtor filed his voluntary petition under chapter 11 of the Code, which was May 17, 2013.

  1.19. Plan means this Plan of Reorganization, including any amendments or modifications in accordance with the terms hereof, the Code, the Rules, or any order of the Court.

  1.20. Professional Person means a Person with a right to payment that has accrued after the Petition Date, but who has not received allowance of a Claim with administrative priority under § 503 of the Code.

1.22. Rules means the Federal Rules of Bankruptcy Procedure, as supplemented and/or modified by the local bankruptcy rules as adopted by the Court and as they may be amended from time to time.

## ARTICLE 2
## TREATMENT OF UNCLASSIFIED (NON-VOTING) CLAIMS

2.01. Administrative Expenses

(A) As of the Confirmation Date, the Debtor will have certain unpaid Administrative Expenses owed to Professional Persons.  Administrative Expenses owed to Professional Persons for services rendered during the Case through the Confirmation Date shall be the subject matter of applications to the Court for allowance in the manner prescribed by the Code, Rules, and applicable order of the Court.  All Administrative Expenses owed to Professional Persons shall be paid in full on the Effective Date or fifteen (15) days after such Administrative Expense has been approved by the Court, whichever is applicable, or upon such other terms as may be agreed upon between the Professional Person holding such Administrative Expense and the Debtor.  Any Professional Person may apply to the Court, once every sixty (60) days, for the interim allowance and payment of fees, costs, and disbursements, and the Debtor may pay any such interim allowance before the Effective Date after the entry of a Final Order permitting such payment.  To the best of Debtor's knowledge there are no administrative expenses owed other than professional fees to undersigned counsel, Debtor's tax counsel – Richard Reiter, and Debtor's Attorney – Frank Mitchell.

(B) Debtor's postpetition obligations incurred in the ordinary course of business have been, and will continue to be, paid in the ordinary course of business without any order of the Court and are not intended to be dealt with under the Plan.

2.02. Quarterly Fees Under 28 U.S.C. § 1930(a)(6)

Post-confirmation and until the entry of a final decree closing the Case, the Debtor will continue to pay accruing quarterly fees to the Office of the U.S. Trustee.

2.03 <u>Priority Tax Claims:</u>   Priority Tax Claims are unsecured claims of governmental units for taxes that are entitled to priority in accordance with Section 507(a)(8) of the Bankruptcy Code.  The Debtor is aware of a Priority Tax Claim.  The Internal Revenue Service (IRS) asserts a Secured Claim in the approximate amount of Seventeen Thousand Nine Hundred Seven and 43/100 Dollars ($17,907.43) for tax year 2011.  The IRS also has a Unsecured Priority Tax Claim in the approximate amount of Twenty Eight Thousand Five Hundred Twenty Five and 93/100 Dollars ($28,525.93) for tax year 2012.

Debtor also is aware that the IRS claims taxes owed for 2007-2011, which would be unsecured nonpriority debt, however, once Debtor's Tax Court case is resolved it is Debtor's understanding Debtor will owe $0.  If the Tax Court case is not resolved in Debtor's favor, Debtor then will allow the claim and pay it at 10% of the amount owed, which is $11,174.69 or less.

Debtor and the IRS have entered into a Consent Order Modifying this Plan and Debtor shall perform pursuant to that.

Debtor shall commence quarterly payments to the IRS in the approximate amount of Three Thousand Two Hundred Fifty and 35/100 ($3,250.35) per quarter for approximately sixteen (16) quarters beginning the first quarter after the Effective Date.  This amount may be subject to change depending on the actual number of months remaining upon confirmation of the plan.  The payment was calculated by estimating simple interest at the current I.R.S. rate of 3% per annum ($348.25/quarter) and dividing $46,433.36/16 quarters.  Payments in this amount will provide payment of the entire Priority Claim within 60 months from the Petition Date.

The Virginia Department of Taxation asserts a Priority Tax Claim in the approximate amount of One Thousand One Hundred Seventy Three and 31/100 Dollars ($1,173.31) for tax year 2011. The Virginia Department of Taxation also has a Priority Tax Claim in the approximate amount of Five Thousand One Hundred Eighty Seven and 00/100 ($5,187.00) for tax year 2012 (though the filed proof of claim shows the tax return had not been filed yet).

Debtor also is aware that the Virginia Dept of Taxation claims taxes owed for 2007, which be unsecured nonpriority debt, however, once Debtor's Tax Court case is resolved it is Debtor's understanding Debtor will owe $0. If the Tax Court case is not resolved in Debtor's favor, Debtor then will allow the claim and pay it at 10% of the amount owed, which is $5,801.84 or less.

Debtor shall make quarterly payments over a period ending not later than 5 years after the date of the Petition Date. Debtor shall commence monthly payments to the Virginia Dept of Taxation in the approximate amount of Four Hundred Forty Five and 22/100 ($445.22) for approximately sixteen (16) quarters beginning the first quarter after the Effective Date. The payment was calculated by estimating simple interest at the current I.R.S. rate of 3% per annum ($47.70/quarter) and dividing $6,360.31/16 quarters. This amount may be subject to change depending on the actual number of months remaining upon confirmation of the plan. Payments in this amount will provide payment of the entire Priority Claim within 60 months from the Petition Date.

If the Debtor fails to make any payment to any of the taxing authorities within fourteen (14) days of the due date of such payment, if the Debtor fails to file any required tax return by the due date of such return, or if the Debtor fails to make any payments due to the taxing authorities under this plan, then the taxing authority may declare the Debtor in default. If the

taxing authority declares the debtor to be in default, the entire imposed tax liability to be paid under the plan, together with any current unpaid liabilities, shall become due and payable immediately upon written notice to the Debtor. The Debtor may cure any default by paying the amount due within fourteen (14) days of the notice of default.

If the Debtor does not make full payment within fourteen (14) days of such demand, then the taxing authority may collect any unpaid liabilities through administrative collection provisions. All notices of default should be sent to the Debtor at Attn: James Jubilee, 11 Aylor Ct, Stafford, VA 22554 and to Debtor's counsel at 4905 Del Ray Avenue, Suite 507, Bethesda, MD 20814.

ARTICLE 3
CLASSIFICATION AND TREATMENT OF OTHER CLAIMS AND INTERESTS

3.01. Class 1 – Claim of PNC Mortgage.

In Class 1 is the Claim of PNC Mortgage [first mortgage], which is secured by a first-priority deed of trust against the Residence in Chantilly, VA. The debt is approximately $788,801.16 based on a proof of claim filed by the Creditor that is fully secured by residential real estate located at 42506 Longacre Drive, Chantilly, VA 20152 with an approximate value of $706,000. The Debtor will pay the Allowed Secured Claim of this Creditor pursuant to the terms of the loan agreement and applicable non-bankruptcy law. The Debtor will pay the arrears of $26,732.45 based on the proof of claim filed over 60 months in equal installments of $445.54. Until PNC Mortgage has been paid in full amount of its Allowed Secured Claim, it shall retain all of the liens securing its Allowed Claim pursuant to the underlying loan documents against the Residence and all rights and remedies it possesses under its loan documents and applicable law without further order of this Court. The Debtor shall also make monthly payments to PNC Mortgage. This class is unimpaired.

3.02. Class 2 – Claim of ASC Mortgage [first mortgage holder Pocomoke, MD].

This Creditor has not filed a proof of claim. The debt is secured by a first priority deed of trust against the property located at 216 Carsons Court, Pocomoke, MD 21851. The debt is approximately $170,913 that is partially secured by the Pocomoke Property with a value of $62,000. The Debtor will pay the Allowed Secured Claim of this Creditor pursuant to the following terms:

The principal balance of the mortgage shall now be $62,000; shall be amortized over 30 years at a rate of 4% even after discharge from bankruptcy. The monthly principal and interest payment shall be approximately $296.00.

Until ASC Mortgage has been paid in full amount of its Allowed Secured Claim, it shall retain all of the liens securing its Allowed Claim pursuant to the underlying loan documents against the Pocomoke Property and all rights and remedies it possesses under its loan documents and applicable law without further order of this Court. ASC Mortgage shall be allowed a general unsecured claim in the amount of $108,913. This class is impaired.

3.03. Class 3 – Claim Chase Mortgage [first mortgage holder Accomac, VA]

In Class 3 is the Claim of Chase Mortgage [first mortgage holder Accomack, VA], which is secured by a first priority deed of trust against the property located at 23278 Greenbush Road, Accomack, VA 23301. This Creditor filed a proof of claim and accordingly the debt is $60,883.93, that is partially secured by the Accomack Property with a value of $55,000. The Debtor will pay the Allowed Secured Claim of this Creditor pursuant to the following terms:

The principal balance of the mortgage shall now be $55,000; shall be amortized over 30 years at a rate of 4.5% even after discharge from bankruptcy. The monthly principal and interest

payment shall be approximately $278.68. Monthly escrow payments for real estate taxes and insurance shall continue to be made to the loan servicer.

Until Chase has been paid in full amount of its Allowed Secured Claim, it shall retain all of the liens securing its Allowed Claim pursuant to the underlying loan documents against the Pocomoke Property and all rights and remedies it possesses under its loan documents and applicable law without further order of this Court. Chase Mortgage shall be allowed a general unsecured claim in the amount of $6,852. This class is impaired.

3.04. Class 4 – Chase Mortgage [first mortgage holder Dover, DE]

In Class 4 is the Claim of Chase Mortgage [first mortgage holder Dover, DE], which is secured by a first priority deed of trust against the property located at 39 Fair Wind Place, Dover, DE 19901. This Creditor filed a proof of claim and accordingly the debt is $140,299.46, that is partially secured by the Dover Property with a value of $65,000. The Debtor will pay the Allowed Secured Claim of this Creditor pursuant to the following terms:

The principal balance of the mortgage shall now be $65,000; shall be amortized over 30 years at a rate of 4.5% even after discharge from bankruptcy. The monthly principal and interest payment shall be approximately $329.35. Monthly escrow payments for real estate taxes and insurance shall continue to be made to the loan servicer. A monthly payment for PMI in the amount of $135.45 will also continue to be made to the loan servier and shall remain in place pursuant to the insurance contract.

Until Chase Mortgage has been paid in full amount of its Allowed Secured Claim, it shall retain all of the liens securing its Allowed Claim pursuant to the underlying loan documents against the Pocomoke Property and all rights and remedies it possesses under its loan documents

and applicable law without further order of this Court. Chase Mortgage shall be allowed a general unsecured claim in the amount of $75,299.46. This class is impaired.

    3.05. Class 5 – Ocwen Loan Servicing [first mortgage holder 27093 Redwood Rd]

In Class 5 is the Claim of Ocwen Loan Servicing, LLC [first mortgage holder 27093 Redwood Rd], which is secured by a first priority deed of trust against the property located at 27093 Redwood Rd, Melfa, VA 23410. This Creditor filed a proof of claim and accordingly the debt is $85,066.30. Debtor will surrender the property in full satisfaction of the debt and any fees, costs, penalties and interest associated therewith.

    3.06. Class 6 – M&T Bank [first mortgage holder 19310 Virginia Ave]

    In Class 6 is the Claim of M&T Bank [first mortgage holder 19310 Virginia Ave], which is secured by a first priority deed of trust against the property located at 19310 Virginia Ave, Melfa VA 23410. The creditor filed a proof of claim so the debt is $87,248.11. The debt is partially secured by the 19310 Virginia Ave Property with a value of $60,000. The Debtor will pay the Allowed Secured Claim of this Creditor pursuant to the following terms:

    The principal balance of the mortgage shall now be $65,000; shall be amortized over 30 years at a rate of 4.5% even after discharge from bankruptcy. The monthly principal and interest payment shall be approximately $329.35.

    Until M&T Bank has been paid in full amount of its Allowed Secured Claim, it shall retain all of the liens securing its Allowed Claim pursuant to the underlying loan documents against the 19310 Virginia Ave property and all rights and remedies it possesses under its loan documents and applicable law without further order of this Court. M&T Bank shall be allowed a general unsecured claim in the amount of $27,413. This class is impaired.

    3.07. Class 7 – Claim of PNC Mortgage [first mortgage holder 27083 Redwood Rd]

In Class 7 is the Claim of PNC Mortgage [first mortgage holder 27083 Redwood Rd], which is secured by a first priority deed of trust against the property located at 27083 Redwood Rd, Melfa VA 23410. This Creditor filed a proof of claim and accordingly the debt is $88,851.95, that is partially secured by the 27083 Redwood Rd Property with a value of $55,000. The Debtor will pay the Allowed Secured Claim of this Creditor pursuant to the following terms:

The principal balance of the mortgage shall now be $55,000; shall be amortized over 30 years at a rate of 4% even after discharge from bankruptcy. The monthly principal and interest payment shall be approximately $262.58.

Until PNC Mortgage has been paid in full amount of its Allowed Secured Claim, it shall retain all of the liens securing its Allowed Claim pursuant to the underlying loan documents against the 27083 Redwood Rd Property and all rights and remedies it possesses under its loan documents and applicable law without further order of this Court. PNC Mortgage shall be allowed a general unsecured claim in the amount of $33,735. This class is impaired.

3.08. Class 8 – Allowed Unsecured Claims

In Class 8 is the Claims of unsecured creditors. The unsecured creditors are the Claims of ASC Mortgage from the crammed down first mortgage on the Pocomoke, MD Property: ***9394; Chase Mortgage from the crammed down first mortgage on the Accomack, VA Property: ***2689 Chase Mortgage from the crammed down first mortgage on the Dover DE Property:***6310; M&T Bank from the crammed down first mortgage on the 19310 Virginia Ave Property: ***8908; PNC Mortgage from the crammed down first mortgage on the 27083 Redwood Rd Property: ***2190; PNC Bank from the lien stripped second mortgage on the Chantilly, VA Property: ***4435; American Express: ***3004; Sharon Murphy; Capital One Bank: ***7176. The total amount of this unsecured debt is approximately $523,477.77.

Payments to this class will conclude within sixty (60) months after the effective date. Payments shall commence within three (3) months after effective date, and thereafter shall be made upon three (3) months intervals or quarterly.

The Debtor will make payment to holders of Allowed Claims of unsecured creditors, as shown in Exhibit 1, pro rata from future income in the approximate amount of $2,617.39 per quarter for twenty (20) quarters commencing one (1) month after the effective date. The total payout this Class is estimated at 10% of total claims in the class. This class is impaired.

3.09 Class 9 – Thomas P. Dore

In Class 9 is the claim of Thomas P. Dore for the deficiency from the foreclosure of 247 South Washington Street, Snow Hill, MD 21863. No proof of claim has been filed. Debtor never received a statement of any amount owing after the foreclosure. Thus, Debtor lists this in his bankruptcy only to confirm that the entire amount owed has been satisfied by the foreclosure. Debtor will pay $0 on this debt.

ARTICLE 4
MEANS FOR EXECUTION OF THE PLAN

The source of the funds to be distributed pursuant to the Plan will be future income of the Debtor. The Plan is feasible as demonstrated by the attached schedules to the Disclosure Statement.

ARTICLE 5
CLAIMS AND DISTRIBUTION MATTERS

5.01. The Debtor or any party who may receive distributions under the Plan may file objections to Claims until 90 days after the Effective Date but not thereafter.

5.02. Distributions and deliveries to holders of Allowed Claims shall be made at the address of each such holder as set forth in its allowed proof of claim or, if none, at such holder's

address set forth in the schedules prepared and filed with the Court pursuant to F.R. Bankr.P. 1007(b) or at such later address as has been made known to the Debtor in writing pursuant to § 9.01(c) of the Plan.

5.03. If any holder's distribution is returned from the address applicable under § 5.02 of the Plan as undeliverable or if a creditor's distribution check is not negotiated such that it clears the Debtor's bank account within 60 days following mailing of such check, then the Debtor shall be authorized in its sole and absolute discretion to stop payment on such distribution and to make no further distribution with respect to the Allowed Claim giving rise to such distribution.  The Debtor shall have the right, but not the obligation, on a case-by-case basis in its sole and absolute discretion, to extend the time for negotiating distribution checks, to re-issue checks on which payment has been stopped, or to make subsequent distributions to creditors who do not timely negotiate their distribution checks.

5.04. The Debtor's failure to make any distribution when due under the Plan shall constitute an event of default.  The Debtor shall have 30 days after receiving a written notice of a default within which to contest or to cure such alleged default.  If the Debtor fails to timely contest or cure such alleged default, then the Creditor affected by such default shall be permitted to pursue its remedies under the Code or to accelerate payments due under the plan.

5.05.  In the event this case is dismissed, the creditors have the right to seek the full amount of the allowed claim.

## ARTICLE 6
## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

The Debtor hereby assumes all unexpired leases and executory contracts in this case.  See Schedule G filed with Petition.

# ARTICLE 7
# EFFECT OF CONFIRMATION

7.01. Upon entry of the Order of Confirmation, the provisions of the Plan shall bind the Debtor and all of their Creditors and equity security holders, whether or not the Claim or interest of such Creditor or equity security holder is impaired under the Plan and whether or not such Creditor or equity security holder has accepted the Plan.

7.02. Upon entry of the Order of Confirmation, the Debtor shall be vested with all of the Debtor's property subject only to the terms of the Plan and the Order of Confirmation.

7.03. Except as otherwise expressly provided in the Plan or the Order of Confirmation, the confirmation of the Plan vests all of the property of the Estate in the Debtor free and clear of all Claims, liens, and interests of Creditors and equity security holders.

7.04. Except as otherwise expressly provided in the Plan or the Order of Confirmation, completion of the Plan discharges the Debtor from any debt that arose before the Completion Date and any debt of a kind specified in section 502(g), 502(h), or 502(I) of the Code.

7.05. The Plan will be deemed fully administered:
    (1) After the completion of the following:
        (A) Six (6) months have elapsed after the entry of a final order of confirmation that has become non-appealable;
        (B) The deposits required by the plan have been distributed;
        (C) The property proposed by the plan to be transferred has been transferred;
        (D) The debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan;
        (E) Payments under the plan have commenced; and
        (F) All motions, contested matters, and adversary proceedings have been finally resolved;
        Or
    (2) For individual Chapter 11 debtors, upon completion of all play payments; or
    (3) At another time specifically defined by the plan.

Debtors will seek to close this Chapter 11 case in compliance with the requirements detailed above.

On the date 5 years after the Effective Date of the Plan and upon completion of payment to those creditors in Class 8, Debtor shall file a motion to reopen his case and to file a motion for entry of a discharge pursuant to 11 U.S.C. Section 1142(B) that provides:

(B) At any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payment under the plan if –

(i) The value, as of the effective date if the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;

(ii) Modification of the plan under section 1127 is not practicable; and

(iii) Subparagraph (C) permits the court to grant a discharge; and

(C) the court may grant a discharge if, after notice and hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that –

(i) section 522(q)(1) may be applicable to the debtor; and

(ii) there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); and if he requirements of subparagraph (A) or (B) are met.

Debtor will continue to pay the other classes of creditors outside of the plan as stated above, but the payment in full of these creditors shall not affect the ability of Debtor to obtain a discharge after 5 years from the date of confirmation of the Plan.

7.06.   Injunction Imposed. The Confirmation Order shall enjoin any action against the Debtor and all persons liable with the Debtor and shall constitute the imposition of a permanent injunction in favor of the Debtor and all persons liable with the Debtor precluding the commencement or continuation of any action or the issuance of any process to the fullest extent permitted and contemplated by 11 U.S.C. §§ 105, 362, and 524 with respect to any debt, obligation, Claim, or guaranty arising prior to the Petition Date and any debt, obligation, Claim, or guaranty classified in any Class in this Plan.

## ARTICLE 8
## RETENTION OF JURISDICTION

8.01. The Court shall retain and have jurisdiction over the Case until completion of the Plan for the following purposes:

(A) To classify the Claim of any Creditor or to re-examine Claims that were allowed for purposes of voting, and to determine such objections as may be filed to the Claims of Creditors.  The failure by the Debtor to object to or examine any Claim for purposes of voting, shall not be deemed to be a waiver of the Debtor's right to object to or re-examine the Claim in whole or in part.

(B) To estimate contingent or unliquidated Claims.

(C) To fix the compensation and reimbursement of expenses to Professional Persons accrued through the Confirmation Date, determine the amount of other Administrative Expenses, and to determine any other fees and expenses authorized to be paid or reimbursed under the Code or the Plan.

(D) To hear and determine Avoidance Actions or other actions to recover money or property for the Estate. The Debtor retains the exclusive right to file such Avoidance Actions or other actions under the Code, but any such actions must be commenced within 120 days after the Effective Date and not thereafter. The Debtor's failure to reference any such actions in the Plan or the accompanying disclosure statement shall not be deemed to be a waiver of the Debtor's right to pursue such actions.

(E) To remedy any defect, to cure any omission, or to reconcile any inconsistency under the Plan or under any order of the Court as may be necessary to carry out the purposes and intent of the Plan; and to interpret and enforce the terms and conditions of the Plan, including any provision for satisfaction of an Allowed Claim.

(F) To modify the Plan after confirmation under §§ 1127 or 105 of the Code.

(G) To determine all suits, controversies, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan.

(H) To determine all cause of action, controversies, disputes, and conflicts arising prior to the Effective Date involving either the Debtor or its assets and any other party, including but not limited to any right of the Debtor to recover assets pursuant to the provisions of the Code. The Debtor's failure to reference any such actions in the Plan or the accompanying disclosure statement shall not be deemed to be a waiver of the Debtor's right to pursue such actions.

(I) To determine the validity, priority, or extent of a lien or other interest in the Debtor's property.

(J) To determine under the Code the amount of any tax, fine, or penalty relating to a tax, or any addition to a tax.

    (K) To issue such orders in aid of execution of the Plan under §§ 1142 or 105 of the Code.

    (L) To determine such other matters as may arise in connection with the Plan or the Order of Confirmation.

    (M) To enter a final decree closing the Case.

  8.02. Except as provided in this Article, the Court's jurisdiction shall terminate as to the Case on the Effective Date.

## ARTICLE 9
## MISCELLANEOUS

  9.01. <u>Notices.</u>  All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by facsimile, or mailed by registered or certified mail with return receipt requested as follows:

    (A) If to the Debtor, then to Jennifer O. Schiffer, Esq., Pels Anderson, L.L.C., 4905 Del Ray Ave, Suite 507, Bethesda, MD 20814, (301) 986-5570, Fax (301) 986-5571, jschiffer@pallaw.com.

    (B) If to a holder of an Allowed Claim, then at the address set forth in its allowed proof of claim or, if none, at such holder's address set forth in its allowed proof of claim or, if none, at such holder's address set forth in the schedule prepared and filed with the Court pursuant to F.R.Bankr.P. 1007(b) prior to the Confirmation Date; and

    (C) Notice shall be deemed given when received.  Any Person may change the address at which it is to receive notices under the Plan by sending written notice pursuant to the provisions of this section to the Person to be charged with the knowledge of such change.

  9.02. <u>Revocation of Plan</u>.  The Debtor reserves the right to revoke and withdraw the Plan prior to entry of an Order of Confirmation.  If the Debtor revokes or withdraws the Plan, or if

confirmation of the Plan does not occur, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceeding involving the Debtor.

      9.03. Reservation of Rights.  Neither the filing of the Plan, nor any statement or provision contained herein, nor the taking by any Person of any action with respect to the Plan shall (a) be or be deemed to be an admission against interest; and (b) until the Effective Date, be or be deemed to be a waiver of any rights which any Creditor may have against either the Debtor, its property, or any other Creditor of the Debtor, and until the Effective Date all such rights are specifically reserved.  In the event that the Effective Date does not occur, neither the Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or outside of the Case involving the Debtor.

      9.04 Taxes.  All tax returns due during the pendency of this case have been filed and all post-petition taxes have been paid in full.

      9.05 Fully Administered Plan

      The Plan

"(a) …will be deemed fully administered under Federal Rule of bankruptcy Procedure 3022:
  (4) After the completion of the following:
    (G) Six (6) months have elapsed after the entry of a final order of confirmation that has become non-appealable;
    (H) The deposits required by the plan have been distributed;
    (I) The property proposed by the plan to be transferred has been transferred;
    (J) The debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan;
    (K) Payments under the plan have commenced; and
    (L) All motions, contested matters, and adversary proceedings have been finally resolved;
      Or
  (5) For individual Chapter 11 debtors, upon completion of all play payments; or
  (6) At another time specifically defined by the plan."

      Debtors will seek to close this Chapter 11 case in compliance with the requirements detailed above in (a)(1).

      On the date 5 years after the confirmation of the Plan and upon completion of payment to those creditors in Class 8, Debtor shall be eligible to obtain a discharge from the Court. Debtor will continue to pay the other classes of creditors outside of the plan as stated above, but the payment in full of these creditors shall not affect the ability of Debtor to obtain a discharge after 5 years from the date of confirmation of the Plan.

                          **James Kenneth Jubilee**

                          /s/ James Kenneth Jubilee
                          James Kenneth Jubilee

                          Respectfully submitted,

                          **PELS, ANDERSON L.L.C.**

                          /s/ Lawrence J. Anderson, Esquire
                          Lawrence J. Anderson, #37266
                          4905 Del Ray Ave, Suite 507
                          Bethesda, MD 20814
                          TEL: (301) 986-5570
                          FAX: (301) 986-5571
                          Counsel for Debtor

Date of Plan: March 25, 2014